**TOWNSHIP OF EAST CALN, Appellant**

v.

**ZONING HEARING BOARD OF EAST CALN TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2006.
Decided Jan. 23, 2007.

David A. Malman, West Chester, for appellant.

John H. Kiefel, Downingtown, for appellee.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and LEADBETTER, Judge.[1]

OPINION BY Judge LEADBETTER.

East Caln Township (Township) appeals the order of the Court of Common Pleas of Chester County (common pleas), which affirmed the decision of the Zoning Hearing Board of East Caln Township (ZHB) granting Cingular Pennsylvania, LLC d/b/a Cingular Wireless, LLC (Cingular) a dimensional variance. The Township argues that the ZHB erred in granting the variance because Cingular failed to establish the criteria set forth in Section 910.2 of the Municipalities Planning Code (MPC)[2] required for the grant of a variance. We reverse.

Cingular leases property located at 321 West Uwchlan Avenue, East Caln Township, Chester County, Pennsylvania (property). The property is the site of a self-storage facility and also contains a one hundred and three foot monopole telecommunications tower. Omnipoint Communications Enterprises, L.P. had previously obtained conditional use approval from the Board of Supervisors of East Caln Township for the construction of that tower. T. Mobile currently has antennas located on the tower. The property is located in an OC–1 Office, Commercial District pursuant to the East Caln Township Zoning Ordinance (Ordinance).

In March of 2005, Cingular filed an application seeking a variance from the following sections of the Ordinance: § 301.1(c) regarding conditional uses, § 602.3(a) regarding nonconforming structures, § 301.2(a)(1)(a) regarding maximum height, and § 301.2(a)(3)(b) regarding yard regulations. Cingular seeks to replace the existing one hundred and three foot tower with a one hundred and twenty-three foot monopole telecommunications tower and to construct accessory equipment on the property. T. Mobile's antennas would be relocated on the new tower at a height of one hundred and three feet, the same height at which they are located on the existing tower. Cingular's antennas would then be placed at a height of one hundred and twenty-three feet. The OC–1 Office, Commercial District has a maximum height restriction of thirty-five feet.[3] Through the construction of the new telecommunications tower, Cingular seeks to eliminate a coverage gap in its existing wireless communications service. In April of 2005, the ZHB convened a hearing on Cingular's variance application. Due to a question as to the notification of a contiguous property owner, the hearing was continued until May of 2005 by agreement of all parties. During the May 2005 hearing, Cingular presented the testimony of Jason Young, a radio frequency design engineer for Cingular; Roger Johnson, a licensed professional engineer employed by Damiano Long, LLC; and James Baber, a site

---

1. This case was assigned to the opinion writer prior to the date when Judge Leadbetter assumed the status of President Judge on January 7, 2007.

2. Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

3. Section 301.2(a) of the Ordinance provides in pertinent part:

 1. Maximum Height.
 (a) For any structure thirty-five (35) feet, but not exceeding three stories.

acquisition consultant employed by Wireless Communication Consultants. Based on this testimony, the ZHB made the following finding of fact, in pertinent part:

25. . . . .

i. That a "coverage hole" exists for Cingular mobile phone coverage in the area of Route 113 in East Caln Township;

. . . .

q. That pursuant to their FCC licenses, Cingular must provide reliable wireless service to all its mobile phone customers, or put their licenses at risk;

r. That the Telecommunications Act of 1996 mandates enhanced 911 for all mobile phone customers;

. . . .

t. That Chester County has asked for "Phase Two" enhanced 911 to be implemented which is the most stringent type of geographic location;

. . . .

v. That Cingular's "coverage hole" on Route 113 in East Caln Township negatively impacts on Cingular's ability to provide reliable enhanced 911 service to its customers;

w. That Cingular evaluated multiple alternate locations, but none was as suitable as the cell site proposed in the Application;

. . . .

qq. That Applicant did not create the unusual and peculiar size, shape, topography, or other physical conditions present on, and around, the Property;

rr. That the Applicant is suffering an unnecessary hardship due to the physical conditions present on, and around

the Property, and not due to circumstances or conditions generally imposed by the OC–1 Zoning District;

ss. That the Applicant did not create the hardship for which it seeks relief;

tt. That the zoning relief requested is necessary to allow the Applicant a reasonable use of the Property;

uu. That the proposed development of the Property will not substantially or permanently impair the appropriate use of the adjacent property, or be detrimental to the public welfare; and

vv. That the zoning relief sought as to the proposed development of the Property was the minimum to afford relief, and least modification of the Ordinance.

*In Re: Application of Cingular Pennsylvania,* LLC D/B/A Cingular Wireless, Zoning Hearing Board of East Caln Township opinion and order, filed June 20, 2005, slip op. at 5–9. With respect to the issue of hardship, the ZHB concluded that the coverage gap "presents a significant life-safety issue that interferes with proper function of the enhanced 911 emergency service tracking and response to mobile phone users in that specific geographic area." Id. at 15. The ZHB determined that this qualified as a "severe hardship to Cingular and to its customers." Id. Therefore, by order dated June 20, 2005, the ZHB granted Cingular a dimensional variance from the thirty-five foot height restriction.[4] This grant, however, was conditioned upon Cingular's compliance with the use regulations of the Ordinance and immediately seeking an amendment of the prior conditional use, which authorized a tower of only one hundred and three feet in height.

4. Additionally, the ZHB denied Cingular's request for variance relief from the yard regulations without prejudice to re-file an application as dictated by the conditional use hearings. The ZHB also denied the special exception sought as to non-conforming structures as it concluded that that section of the Ordinance was inapplicable to Cingular's application.

The Township appealed the grant of the dimensional variance to common pleas. The Township argued that the ZHB erred in concluding that Cingular had established the requirements of Section 910.2 of the MPC for the grant of a variance. The Township specifically contended that no unique physical conditions of the Property preclude its use in conformity with the Ordinance and that the requested variance is not necessary to enable reasonable use of the Property. In sum, the Township maintained that Cingular had failed to establish the hardship required to justify the grant of the variance. The Township further argued that the ZHB erred in granting variance relief based solely upon a limited analysis of the Property's ability to accommodate the specific wireless communications needs of Cingular.

■ Common pleas affirmed the decision of the ZHB, specifically noting that the economic detriment to Cingular was not the ZHB's sole basis for granting the variance. Rather, the court concluded that Cingular had "successfully proved that it needed a variance in order to build a taller tower to better serve the citizens" of the Township. *East Caln Township v. Zoning Hearing Bd. of East Caln Township* (No. 05–05657, C.C.P. of Chester County, filed April 19, 2006), slip op. at 8–9. The court observed that "[d]ue to the natural topography of the land, a taller tower is necessary so that calls are. not dropped, including emergency calls and [911] calls." Id. Common pleas further concluded that Cingular could not provide the enhanced 911 emergency services to customers in the Township without the new tower. The Township now appeals to our court, reasserting the contention that Cingular failed to establish hardship justifying a variance.[5]

■ To obtain relief in the form of a variance, the applicant must establish that: (1) there are unique physical circumstances or conditions; (2) causing unnecessary hardship in the form of an unreasonable inhibition of usefulness of the property; (3) the hardship is not self-inflicted; (4) the grant of the variance will not adversely impact public health, safety, and welfare; and (5) the variance sought is the minimum that will afford relief. 53 P.S. § 10910.2; *Jenkintown Towing Serv. v. Zoning Hearing Bd. of Upper Moreland Twp.*, 67 Pa.Cmwlth. 183, 446 A.2d 716, 720 (1982). In general, "the quantum of proof required to establish unnecessary hardship is … lesser when a dimensional variance, as opposed to a ˙use variance, is sought." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 554 Pa. 249, 258–59, 721 A.2d 43, 47–48 (1998). In *Hertzberg*, our Supreme Court, reviewing the grant of a variance to a nonprofit social service agency, stated that, in deciding whether to grant a dimensional variance, "courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." [6] Id. at 264, 721 A.2d at 50. However, in *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779

5. Where, as here, common pleas has taken no additional evidence, our review is limited to determining whether the Board's decision is supported by the evidence and free of legal error. *Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Philadelphia*, 867 A.2d 706, 707–08 (Pa.Cmwlth.2005).

6. Cingular argues that the life-safety issue is properly considered in the hardship analysis under the "characteristics of the surrounding neighborhood" factor.

A.2d 595 (Pa.Cmwlth.2001), a property owner who operated and maintained a car dealership on his property applied for a dimensional variance that would have allowed construction of an additional auto sales and service facility. The zoning hearing board granted the variance. We reversed and opined:

> Ever since our Supreme Court decided *Hertzberg,* we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes,* so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. *However, it did not alter the principle that a substantial burden must attend all dimensionally compliant uses of the property, not just the particular use the owner chooses.... A variance, whether labeled dimensional or use, is appropriate "only where the property, not the person, is subject to hardship."*

Id. at 598 (citation omitted) (emphasis added). Therefore, we held that the owner was not entitled to the variance as the property was "well suited to the purpose for which it [was] zoned and actually used." *Id.*[7] We commented that the owner had "proven nothing more than that adherence to the ordinance imposes a burden on his personal desire to sell vehicles for Land Rover." Id.

■■■ Moreover, in *Society Created to Reduce Urban Blight v. Zoning Hearing Bd. of Adjustment of the City of Philadelphia,* we stated:

> [W]hile *Hertzberg* eased the requirements for granting a variance for dimensional requirements, it did not make dimensional requirements ... "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were the case, dimensional requirements would be meaningless-at best, rules of thumb-and the planning efforts that local governments go through ... to have light, area (side yards) and density (area) buffers would be a waste of time. Moreover, adjoining property owners could never depend on the implicit mutual covenants that placing dimensional restrictions on all property would only be varied when there were compelling reasons that not to do so would create a severe unnecessary hardship.

771 A.2d 874, 877–78 (Pa.Cmwlth.2001). A property owner does not have a right to utilize his land for his highest and best financial gain. *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of Philadelphia,* 804 A.2d 116, 120 (Pa. Cmwlth.2002). Showing that a lot can be used in a more profitable fashion is insufficient; there must be no permitted use to which the land can feasibly be put before a

---

7. *See also Great Valley Sch. Dist. v. Zoning Hearing Bd. of East Whiteland Twp.,* 863 A.2d 74 (Pa.Cmwlth.2004), *petition for allowance of appeal denied,* 583 Pa. 675, 876 A.2d 398 (2005) (holding that school district was not entitled to a variance allowing it to erect eighty-five foot high light poles at its football field, where without the variance the school district could continue to use existing thirty-five foot high lighting that complied with Township's ordinance height restriction).

use variance is granted. *Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of Philadelphia,* 814 A.2d 847, 850–51 (Pa.Cmwlth.2003).

 The ZHB based its finding of unnecessary hardship solely upon the life-safety issue posed by the coverage area gap in Cingular's wireless service. The ZHB found that the coverage gap interfered with the proper functioning of the enhanced 911 emergency service. Such health and safety issues are important concerns, and the Township may wish to amend its ordinance in order to address them. However, the well-established law does not permit the grant of a variance on the basis that it is in the public interest. A variance may be granted only upon proof that a substantial burden attends all dimensionally compliant uses of the applicant's property, which is simply not the case here. Among other uses permitted by the ordinance,[8] the property can continue to be used to house the existing one hundred and three foot telecommunications tower as well as the self-storage facility. While Cingular evaluated alternative sites and concluded no other sufficed, this does not establish a hardship that attends the *property,* as distinguished from its *owner. See Yeager,* 779 A.2d at 598. Therefore, Cingular has not met its burden to show unnecessary hardship that will justify a variance, and accordingly, we reverse.[9]

---

8. Section 301.1 of the Ordinance lists the permitted principal uses, as follows:

 A building may be erected, altered or used and a lot may be used or occupied for any of the following purposes and no other:
 a. Permitted Principal Uses.
 1. Business and/or Professional Offices, Banks, Savings & Loan, Credit Unions and/or Commercial Loan Offices and Governmental Offices.
 2. Funeral Homes. (see Section 501.6)
 3. Retail and Personal Services Shops related to, and located in an office building.

**ORDER**

AND NOW, this 23rd day of January, 2007, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby REVERSED.

---

 4. Restaurant or other place serving food and beverage.
 5. Day Care Center. (see Section 501.4)
 6. Open Space Recreation. (see Section 608)

9. In light of the disposition of this case in favor of the Township on the grounds that Cingular failed to establish unnecessary hardship, we need not address the Township's contentions that the variance will alter the character of the neighborhood and that it is not the minimum necessary to afford relief.