**In re: Appeal of TOWAMENCIN TOWNSHIP from the Decision, Dated May 7, 2010, of the Zoning Hearing Board of the Township of Towamencin.**

**Property: 2130 Kulp Road.**

**Appeal of: Towamencin Township.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2012.
Decided April 3, 2012.
Reargument Denied May 22, 2012.

John T. Dooley, Lansdale, for appellant.

Erich J. Schock, Center Valley, for appellee New Cingular Wireless, PCS, LLC.

BEFORE: McGINLEY, Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Towamencin Township ("Township") appeals from the order of the Court of Common Pleas of Montgomery County, which affirmed the decision of the Zoning Hearing Board of Towamencin Township ("ZHB") that granted variances to Drew R. Bechtel ("Property Owner") and New Cingular Wireless PCS, LLC d/b/a/ AT & T Mobility ("AT & T"), here the interve-

nor/appellee. Upon review, we affirm.[1]

The facts are not in dispute. The property at issue is an 81.43–acre farm that has been owned by the Bechtel family since 1806 and is located in Towamencin Township's R–200 Residential Agricultural Zoning District. (Towamencin Township Zoning Ordinance ("Ordinance"), 153–401, Reproduced Record (R.R.) at 26a, 287a, 294a–295a, 495a.) The property is used as a residence and working dairy farm by the Property Owner. (R.R. at 294a–295a.) The farm is one of two remaining dairy farms in the area. (R.R. at 306a.) In addition to the residence, the property contains fourteen structures as part of the dairy farm, including a fifty-five-foot silo and an eighty-foot silo. (R.R. at 300a, 310a, 351a.) The two silos currently in use are not sufficient to store the Property Owner's corn, which is grown to feed the dairy animals. (R.R. at 297a–299a.) The Property Owner stores the excess crop in "hag bags" or what are basically large plastic zipper-locking bags used as temporary storage for crops. (R.R. at 296a, 298a–299a.) These hag bags are problematic, first, because the topsoil indigenous to the property engulfs the bags in muck and second, because they frequently tear, exposing the feed to air, birds, and rats compounding the existing manure problem. (R.R. at 297a–299a.) The result is that either from inaccessibility or exposure or both, the hag bags occupy two acres of tillable land storing needed crop that has spoiled or will spoil. (R.R. at 297a–299a, 304a.) This construction, coupled with the structured lease the Property Owner seeks to enter into with AT & T, will allow the farm to modernize, a step necessary for the Property Owner to continue the use his family has pursued on their land for generations, and to make the dairy farm viable into the future. (R.R. at 301a–302a, 307a.)

Due to a gap in wireless communication coverage, AT & T searched the Township for existing tall structures on which it could place antennas. (R.R. at 314a, 368a.) This search was constrained by the township's quick changing terrain, which features creeks, valleys, and dense, wooded areas that create unique and difficult conditions for wireless communication providers, particularly in the southwestern portion of the township serviced by AT & T. (R.R. at 313a, 371a–372a, 378a–379a.) AT & T discovered that the existing electric company transmission structures were unable to accommodate AT & T co-location, because to accommodate the wireless communication function the lines would have to be converted, which in turn would render them incompatible with the needs of the electric company. (R.R. at 315a, 320a, 375a, 377a.) AT & T approached the Township about leasing space on municipal land within the zoning ordinances, but the Township was not interested. (R.R. at 314a, 317a, 320a.) AT & T then approached the Property Owner about co-locating the cellular antennas on the property. (R.R. at 316a, 320a.) The Property Owner informed AT & T about his plans to obtain a variance to construct a 130–foot silo; AT & T convinced the Property Owner to construct a silo ten feet shorter, in order to comply with the applicable dimensional requirements for wireless telecommunication facilities and allow for antennas

---

1. Where the trial court did not take additional evidence, this Court's scope of review is limited to determining whether the ZHB committed an error of law or abused its discretion. *Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 543 Pa. 415, 419, 672 A.2d 286, 288 (1996). An abuse of discretion will be found only where the ZHB's findings are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Bd. Of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

to be place on the silo. (R.R. at 166a, 309a.)

To obtain zoning relief, AT & T and the Property Owner submitted a conditional use application to the Township Board of Supervisors, which, if approved, would have allowed the Property Owner to construct a 120-foot silo and AT & T to co-locate wireless antenna on the silo, as well as to construct an equipment shed on the Property Owner's farm to support the communication antenna. (R.R. 460a–461a.) AT & T's application was administratively denied in a letter from the Director of Community Planning. (R.R. at 460a–462a.) The letter informed AT & T that the proper course of action was to apply for a variance for the silo and the antenna. (*Id.*) AT & T then, in coordination with the Property Owner, applied to the ZHB for zoning relief. (R.R. at 434a.)

The ZHB conducted a public hearing. All four of the neighboring property owners appeared to testify in support of the Property Owner and AT & T's application. (R.R. 390a–397a.) The Township did not send a representative to the hearing and no one appeared in opposition to the application. (ZHB Finding of Fact (F.F.) ¶¶ 49–50, R.R. at 499a.) Following the public hearing, the ZHB granted AT & T and the Property Owner the following relief (the "Variance"):

Variance from section 153–401.E [2] of the Ordinance to permit construction of a silo 119 feet, 6 inches tall, exceeding the maximum permitted 65 feet;

Variance from section 153–621.D(3) [3] of the Ordinance to permit installation of an array of not more than 12 antennas on the proposed silos, at a height of 117 feet;

Variance from section 153–621.H(2) [4] of the Ordinance to permit construction of a 240 square foot equipment facility, exceeding the maximum permitted 100 square feet within a rear yard.

(ZHB May 6, 2010 Order (Order), ¶¶ 1–3, R.R. at 501a.)

The Township filed a timely appeal in the Court of Common Pleas, which remanded to the ZHB to issue findings of facts and conclusions of law in support of its decision. The ZHB complied. The Court of Common Pleas allowed AT & T to intervene as appellee, and in a November 13, 2010 order granted the ZHB's request to withdraw as a party. The Court of Common Pleas, in a June 17, 2011 order and a September 27, 2011 opinion, af-

---

**2.** "R–200 Residential Agricultural District– Maximum height regulations.

| Use Type | Requirement |
| --- | --- |
| Principal residential structure | 35 feet, not exceeding 2½ stories |
| Principal structure, nonresidential | 65 Feet * |
| Residential accessory structure | 14 feet, not exceeding one story |

Notes: *By special exception from the Zoning Hearing Board, provided that for every foot of height in excess of 35 feet there shall be added to each yard requirement one corresponding foot in width or depth."
Towamencin Township Zoning Ordinance, Section 153–401.E. (R.R. at 28a.)

**3.** "Wireless telecommunications facilities—Use regulations: When the antenna array is attached to an existing attachment structure, support structure, public utility transmission tower, smokestack, water tower, building or tall structure in any zoning district other than the LI Limited Industrial District, an antenna array with an accompanying equipment facility is permitted by conditional use." Towamencin Township Zoning Ordinance, 153–621.-D(3). (R.R. at 162a–163a.)

**4.** "In residential districts, an equipment facility: May be located in the rear yard, provided the equipment facility is no greater than six feet in height or 100 square feet in gross floor area ..." Towamencin Township Zoning Ordinance, 153–621.H(2)(a)(2). (R.R. at 168a–169a.)

firmed the decision of the ZHB. The Township then filed an appeal with this Court. The Township argues that the Court of Common Pleas erred as a matter of law and abused its discretion, because the ZHB's findings are contrary to the Ordinance and are not supported by substantial evidence.

The Township makes a wide-ranging argument that can be distilled down to one issue: the variance granted by the ZHB is not a reasonable adjustment, but a substantial variation from the zoning code and, therefore, like a use rather than a dimensional variance, requires a greater showing of hardship than that evidenced by the Property Owner.

Under the Pennsylvania Municipalities Planning Code (MPC), the ZHB may grant a variance, provided that the applicant has shown that compliance with the ordinance in question would work an unreasonable hardship upon the applicant and that the proposed use would not be contrary to the public interest. Act of July 31, 1968 P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.[5] The determination of whether or not the evidence satisfies this test is the function of the ZHB and "the courts will not disturb that determination unless it is not supported by substantial evidence, i.e. such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment,* 501 Pa. 550, 559, 462 A.2d

637, 642 (1983). In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,* our Supreme Court explained that when the application is for a dimensional rather than a use variance, the analysis of what constitutes unreasonable hardship focuses on whether the zoning requirements work an unreasonable hardship on the owner's pursuit of a permitted use and, if so, allows for a lesser quantum of proof. 554 Pa. 249, 257–58, 721 A.2d 43, 47 (1998). The Court explained that in a dimensional variance analysis, because of this lesser quantum of proof, courts may consider multiple factors not traditionally considered in the analysis for use variances, including "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 264, 721 A.2d at 50.

Since *Hertzberg,* this court has frequently been called upon to remind property owners that while *Hertzberg* may have relaxed the degree of hardship that will justify a dimensional variance, it does not stand for the principle that a property owner may receive a dimensional variance anytime the owner is prevented from using the property exactly as he or she wishes by dimensional requirements, or, as we have said before, *Hertzberg* did not create "free fire zones." *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment City of Philadelphia,* 771 A.2d

---

5. The MPC requires a property owner to demonstrate:
 (1) That there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions;
 (2) That because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a

variance is needed to enable reasonable use of the property;
 (3) That unnecessary hardship has not been created by the applicant;
 (4) That the variance is not detrimental to the public welfare; and
 (5) That the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue.
53 P.S. § 10910.2.

874, 877 (Pa.Cmwlth.2001); *Yeager v. Zoning Hearing Bd. of the City of Allentown,* 779 A.2d 595, 597–98 (Pa.Cmwlth.2001). The Township would like us to believe that the dimensional variance objected to here falls within the same class of variances stretching beyond the bounds of *Hertzberg.* It does not.

To support its contention that the Variance reaches beyond the bounds of dimensional and into the category of use relief, the Township asserts that the Variance is akin to that denied in *Rollins Outdoor Advertising, Inc. v. Zoning Board of Adjustment,* 108 Pa.Cmwlth. 277, 529 A.2d 99 (1987). In *Rollins,* this Court affirmed the denial of a variance to allow the property owner to maintain a nonconforming sign, which encroached two feet into a 75-foot buffer zone for residential property. 529 A.2d 99 (Pa.Cmwlth.1987). The non-conforming sign faced neighborhood opposition and was found by the ZHB to be contrary to the public welfare. *Id.* at 102. The ZHB also concluded that the only hardship suffered by the property owner from denial would be economic. *Id.* at 102. This Court explained that while the variance may at first blush appear to be dimensional, the variance in question was really a use variance, because the property owner was seeking to extend the sign in the buffer zone where the use was not permitted. *Id.* at 103.

In contrast, the Variance at issue here is not a use variance masquerading as a dimensional variance. Unlike the sign at issue in *Rollins,* the silo's increased dimensions will not reach into a buffer zone or a district that, under the Township's zoning scheme, does not permit agricultural use.

What the silo will do is further penetrate the Township's skyline, impinging on the rights of no one, with the full support of neighboring property owners.

Consideration of the antenna array and the equipment shed with the proposed silo likewise does not convert the Variance into a use variance as the Township suggests. Article VI of the Ordinance governs Wireless Telecommunication Facilities and provides the general provisions applicable to all districts, thus modifying the sections of the Ordinance addressing specific districts. (R.R. 4a, 136a–172a.) Within Article VI, Section 153–621.D of the Ordinance permits an antenna array with an accompanying equipment facility by conditional use in R–200 Districts. (Ordinance, 153–621.D(3), R.R. at 162a–163a.) The Ordinance states that the "conditional use" is permitted when the antenna array is attached to an "existing ... building or tall structure." (Ordinance, 153–621.D(3), R.R. at 162a–163a.) The structure here, the silo, is proposed and not "existing." The relief directed at Wireless Telecommunication Facilities does not extend a use into a district where it is not permitted, but grants permission to read "existing" as encompassing proposed construction.[6] The Ordinance clearly contemplates consideration of the antennas and equipment shed along with the proposed silo; the Ordinance again and again mandates colocation and stealth where possible in the placement of these facilities. (Ordinance, 153–621.D(3), 153–621.E(14), 153–621.F(12)–(14), 153–621.G(1)–(3), R.R. at 162a–163a, 165a, 167a–168a.) Even in defining the purpose of the provisions addressing Wireless Telecommunication Facilities, the Ordinance specifies one of the goals of the

**6.** To the extent that the Township argues the ZHB was in error to grant permission to place wireless communication antenna on the proposed silo, rather than approving the silo and then referring the parties back to the Township to again apply for a conditional use permit, we find conclusive the Township's own letter directing AT & T to the ZHB. (R.R. at 462a.)

section is "to effect collocation and site sharing of new and existing wireless telecommunication facilities." (Ordinance, 153–621.A(1)(e), R.R. at 160a.)

 Even if we find that the Variance does not provide use relief, as we have, the Township argues that the Property Owner has not evidenced a significant enough hardship to support the ZHB's grant of dimensional relief. The Township likens the present case to *Township of East Caln v. Zoning Hearing Board of East Caln Township*, 915 A.2d 1249 (Pa.Cmwlth.2007) and *Schomaker v. Zoning Hearing Board of the Borough of Franklin Park*, 994 A.2d 1196 (Pa.Cmwlth.2010), *appeal denied*, —— Pa. ——, 27 A.3d 226 (2011). Both of the cited cases involve requests by wireless telecommunication providers to obtain variances in order to construct towers on which they can place antennas. Yet, it is with the presence of like parties that the similarities with the present case end.

*Township of East Caln* involved an application by a wireless communication provider to expand an existing conditional use permit in order to construct a new monopole that exceeded the height requirements of the applicable ordinance. 915 A.2d at 1250. The wireless communication provider introduced evidence before the ZHB documenting the coverage gap and attendant interference with emergency service functioning that would be eliminated by the variance; the ZHB granted the variance, reasoning that the variance was in the public interest. *Id.* at 1251, 1254. In reversing the grant of the variance, this Court stressed that in order to carry the burden necessary for variance relief, the property owner must "establish a hardship that attends the *property,* as distinguished from its *owner.*" *Id.* at 1254 (emphasis in original). Instead, the wireless communication provider had established a hardship accompanying its accessory use of the property, while the property itself was already being productively used as a self-storage facility and the applicable ordinance permitted a wealth of other principle uses. *Id.* at 1254.

Here, the hardship argued by the Property Owner does attend the property. Unlike *Township of East Caln,* the Property Owner is not attempting to extend a conditional use, but seeking to sustain a use granted as of right under the Ordinance. By likening the case before us to *Township of East Caln,* the Township seeks to use the evidence concerning AT & T's coverage gap to negate the evidence demonstrating an unreasonable hardship. Yet, *Township of East Caln* does not counsel that a variance cannot be granted where a wireless communication provider is involved and the public is benefited by improved coverage; *Township of East Caln* instead clearly advises that a variance cannot be granted when found to be in the public interest *alone.*

*Schomaker,* too, is distinguishable from the case before us, even though it, like *Township of East Caln,* involves a wireless communication provider. In *Schomaker,* the wireless communication provider sought a variance in order to construct a communication tower that did not conform to the applicable ordinance's setback requirements. 994 A.2d 1196, 1197. The wireless provider offered evidence that it was unable to conform to the setback requirements, because the property already contained an electrical substation, which limited the shape and size of available land on which to construct. *Id.* at 1197–1198. A neighboring property owner objected, arguing that the constraints placed on the proposed tower were not due to a hardship associated with the land, but due to the pre-existing reasonable use of the property. *Id.* at 1199, 1203.

The case before us does not present a hardship created by the property owner nor do the facts reveal an attempt to push beyond the bounds of the zoning ordinance to overburden the property with additional accessory uses for financial benefit. The Variance here was granted to sustain the reasonable pre-existing use of the property, a finding that is not undermined merely because the Variance allowed for the placement of wireless communication antenna. Unlike *Schomaker,* the involvement of the wireless communication provider in the instant case helped to lessen the degree of deviation from the Ordinance requested by the Property Owner and worked to ensure the minimum variance necessary for relief.

Finally, our Supreme Court has recognized a distinction between the showing necessary to receive a dimensional variance and that required for relief in the form of a use variance; the Court has never accepted the proposition advanced by the Township that there exists an intricate spectrum of dimensional relief, where each point on this continuum requires a greater or lesser showing of hardship. The question before us remains unchanged: whether such relevant evidence as a reasonable mind might accept supports the conclusion that an unreasonable hardship is present.

■ Substantial evidence was presented before the ZHB that, because of an unreasonable hardship created by the soft, moist soil native to the property, the Property Owner cannot maintain the current use of the property without a variance. The current silos on the property are not sufficient to store the Property Owner's crop of high-moisture corn, which is needed to feed the animals making up the dairy farm. (R.R. at 296a–297a.) The Property Owner currently stores the excess crop in hag bags. (R.R. at 296a, 298a–299a.)

Substantial evidence at the hearing established that continued use of the hags bags would be a hardship on the Property Owner and threatened the viability of the farm. (R.R. at 297a–299a, 304a.)

The Property Owner testified that he could jettison the same amount of hag bags and stay within the zoning ordinance if he were to build multiple smaller silos, but to do so he would not gain as much land, as each silo would entail the additional footprint created by the accompanying loader, and he would be required to pay out at least a $100,000 per silo, a financial impossibility. (R.R. at 303a–304a, 308a.) The evidence also showed that silos upwards of 100 feet are standard for today's farms, while silos constructed in accordance with the dimensional requirements of the applicable ordinance are no longer being built. (R.R. at 301 a–302a.)

Substantial evidence was presented before the ZHB that the Variance would have minimal impact and help maintain the essential nature of the neighborhood. The applicants showed that if the Ordinance were extrapolated to account for the increased dimensions, the setback requirements that would be applicable to the silo would be easily satisfied. (R.R. at 341a–342a, 351a.) Similarly, the equipment shed would be constructed on the working part of the farm where it would blend in as one of fifteen structures and the antennas, as well as any lines or cables would be painted to match the silo. (R.R. at 324a, 330a, 351a.) The applicants also showed that the Variance does not create an intensified impact on the surrounding area, such as increased road traffic or use of public services. (R.R. at 343a–344a.)

Substantial evidence demonstrated that the additional storage space allowed by the Variance, coupled with the added income from the antennas, will allow the Property Owner to continue operations and pass on the farm to future generations. (R.R. at

307a–308a, 497a.) The property is surrounded by open space and the owners of neighboring properties have sold the development rights so that the land cannot be developed. (R.R. at 306a–307a.) The property has been used for farming for over 200 years, with the Property Owner representing the eighth generation of his family to own and operate the farm. (R.R. at 295a.) Testimony at the ZHB gave voice to the value that neighboring property owners placed on the continued operation of the property as a dairy farm and the support present in the community for the zoning relief requested. (R.R. at 391a–396a.)

In sum, substantial evidence exists of the economic detriment to the Property Owner if the Variance is denied, the financial hardship construction of multiple silos would entail if the Property Owner were required to be in strict compliance with the zoning requirements, and the role the farm's continued operation plays in maintaining the distinct character of the surrounding neighborhood. It is also not without import that the Variance does not impinge upon the background considerations of ensuring light, area, and density buffers inherent in all dimensional requirements. Therefore, we find that the determination of the ZHB that compliance with the ordinance in question would work an unreasonable hardship upon the applicant is supported by substantial evidence.

For the aforementioned reasons, we affirm.

### ORDER

AND NOW, this 3rd day of April, 2012, the June 17, 2011 order of the Montgomery County Court of Common Pleas in the above-captioned matter is affirmed.