IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heywood Becker, Trustee of : 
Hanoverian Trust and : 
Hanoverian Trust, : 
           Appellants : 
            : 
         v. :    No. 2092 C.D. 2015
            :    Submitted: May 27, 2016
Zoning Hearing Board of : 
Straban Township : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: August 26, 2016

      Heywood Becker (Becker), Trustee of Hanoverian Trust, and Hanoverian Trust (Trust) appeal an order of the Adams County Court of Common Pleas (trial court) that upheld a decision of the Zoning Hearing Board of Straban Township (Zoning Board) to deny the Trust a zoning permit and its request for a variance. The Trust contends that it was denied due process because the Zoning Board based its decision on a provision of the Zoning Ordinance that had not been cited by the zoning officer when he denied the application for a zoning permit, and this change adversely impacted the Trust's case. Concluding that the Zoning Board's correction did not deprive the Trust of a fair hearing, we affirm the trial court.

## Background

      The Trust is the owner of real estate located at 2440 Old Harrisburg Road, Straban Township, Adams County. The property lies in the Mixed Use –

Neighborhood (MU-2) zoning district as established by the Straban Township Zoning Ordinance.[1] Located on the property is a 12-unit motel that was built over 60 years ago, which predated Straban Township's enactment of a zoning ordinance and, thus, was a lawful, non-conforming use. However, the motel use was abandoned by a prior owner; this was established in separate litigation.

Becker, on behalf of the Trust, applied to the Township's zoning officer for a permit to use the motel as a "multiplex" building, with each of the 12 rooms to be converted to apartments. On April 30, 2014, Earl Baer, the Township's assistant zoning officer, advised Becker that the requested land use permit could not be issued for the following reasons: (1) the units do not comply with Section 140-15.C.(4)(c)[2] of the Straban Township Zoning Ordinance because the average unit size is 303 square feet, and (2) the parking for the units in the front of the building does not comply with Section 140-15.C.(4)(d)[3] of the Zoning Ordinance. Reproduced Record at 2 (R.R. __). The Trust appealed the denial of the requested permit to the Zoning Board and also requested a variance from each of the ordinance provisions identified by the zoning officer in his denial.

At the hearing before the Zoning Board, Becker testified that the property was built in the late 1940s as a motel. Notes of Testimony, 7/16/2014, at

[1] THE STRABAN TOWNSHIP ZONING ORDINANCE, Ordinance No. 2006-6, *as amended* (Zoning Ordinance).

[2] Section 140-15.C.(4)(c) establishes dimensional requirements for a multiplex unit. It provides:
> (c) Unless otherwise specified in this chapter, each unit shall be a minimum of 750 square feet or larger.

ZONING ORDINANCE §140-15.C.(4)(c).

[3] Section 140-15.C.(4)(d) provides:
> (d) Off-street parking shall be located behind the plane of any primary façade.

ZONING ORDINANCE §140-15.C.(4)(d).

23 (N.T. at __); R.R. 23. Since then, there have been no material changes to its dimensions, height, or number of rooms. *Id.* After acquiring the property, Becker converted the motel into apartments, which are rented to tenants under a one year lease.

Becker testified that without a variance, the property could not be used for any purpose. Becker explained that the motel building is more than 200 feet in length, approximately one room deep, and one story in height. *Id.* Becker testified that the 12 rooms vary in size; most are 350 square feet in area. Becker testified that the unique physical characteristics of the building, which is unlike any other building in the immediate neighborhood, together with the limited size of the rooms, created a hardship. Further, this hardship was not created by the Trust or its predecessor in title. Becker testified that there is no possibility that the property could be used in strict conformity with the Zoning Ordinance, which requires a minimum of 750 square feet for an apartment, and, thus, the Trust needs a dimensional variance. Becker explained that the proposed multiplex would not alter the essential character of the neighborhood because there would be no changes to the building's exterior, the land, the parking or storm water drainage. Neither the neighborhood nor adjacent properties would be adversely affected.

Finally, Becker testified that the Trust requested the minimum variance needed to satisfy the Zoning Ordinance. Becker testified that to meet the minimum square footage, the Trust would have to combine approximately every two and one-half units into one unit. Removing and replacing the five internal walls separating the units would cost approximately $90,000. Becker explained that the additional rent that could be charged for a larger unit would be minimal,

3

making the cost to modify the building to conform to the Zoning Ordinance prohibitive.

On cross-examination, Becker admitted that he did not know how many people were presently living at the property; however, nine units were occupied. He also acknowledged that he did not get an estimate of the cost to install a door in between every two units, which would effectively double the size of each unit without having to remove internal walls.

The Trust offered the testimony of Mark Wizeman, an architect. Wizeman testified that in order to preserve the existing footprint of the building, but make the existing units conform to the minimum 750 square foot requirement, the Trust would have to move walls that are load bearing or contain plumbing and electrical wiring. These modifications would be prohibitively expensive. Further, in order to arrive at the minimum square footage of 750 square feet, every two and one half units would need to be combined resulting in long and narrow units,[4] which would be atypical. Wizeman testified that eight of the units measure approximately 342 gross square feet. He believed that these units could serve as "studio apartments" because they have a defined bedroom and living areas, a bathroom and a kitchen area.

On cross-examination, Wizeman stated that the square footage of the usable space in the units was approximately 280 square feet. Wizeman acknowledged that he was not able to identify which walls were supporting, or merely partition walls, because he was not a structural engineer.

---

[4] Each unit measures approximately 16'6" in width and 20'9" in length, with 342 gross square feet. Trust Exhibit 2, appended to R.R. A new unit created by combining 2½ units would remain 16'6" wide, but the length would increase to 52'3".

4

Following the hearing, the Zoning Board affirmed the denial of the Trust's request for a land use permit. In doing so, it did not rely upon Section 140-15.C.(4)(c) of the Zoning Ordinance, which was cited by the zoning officer and requires a minimum of 750 square feet for a single unit. Instead, the Zoning Board held that the permit was properly denied because the proposed use did not comply with Section 140-31.B of the Zoning Ordinance, which requires a minimum of 550 square feet of habitable floor area for a multiplex unit.[5] Because each multiplex unit measures 303 square feet, each was undersized.[6]

The Zoning Board treated the Trust's request for a variance to include the habitable floor area requirement in Section 140-31.B. It denied the variance, explaining as follows:

> (1) Applicant does not suffer a hardship with respect to these standards. Applicant's perception of hardship arises from his plan to convert each small 1950[]s motel room into undersized dwellings for individuals and families. Applicant can readily merge two motel rooms into one apartment meeting standards for a three unit residential conversion or may be able to create efficiency apartments. Only one option or prototype was presented to the Board which proposes substantially undersized dwellings.
>
> (2) The former motel structure can be used in conformity with the minimum habitable floor area requirement by combining

---

[5] Habitable floor area is defined as "[t]he sum of the horizontal areas of all rooms used for habitation, such as living room, dining room, kitchen and bedroom, but not including hallways, stairways, cellars, attics, service or utility rooms, bathrooms, closets, nor unheated areas such as enclosed porches nor rooms without at least one window or skylight opening onto an outside yard or court." ZONING ORDINANCE §140-5.A.

[6] The Zoning Board noted that the square footage of units proposed in the submission to the zoning officer was not the same as presented at the hearing, but the discrepancy did not affect the Board's decision. Zoning Board opinion at 7; R.R. 124.

two motel[] rooms into one or by creating conversion apartments.

(3) Applicant is creating the hardship that he perceives. Converting nine motel rooms into nine individual apartments has inherent difficulties and expense but that decision by Applicant is not required by the terms of the Ordinance.

****

(5) Granting a variance based on the evidence presented to the Board does not represent minimum relief required to afford relief or minimize the conflict with the regulation at issue. The evidence presented to the Board does not reflect an effort to meet minimum habitable floor space requirements as defined in the Ordinance.

Zoning Board's opinion at 6; R.R. 123. The Zoning Board did, however, grant the Trust a variance from the parking requirement of Section 140-15.C.(4)(d) of the Zoning Ordinance, which had been cited by the zoning officer in his disapproval of the permit.

The Trust appealed to the trial court, which affirmed the Zoning Board's decision without taking additional evidence. The Trust now appeals to this Court.

### Issues

On appeal,[7] the Trust raises two issues. First, it contends that the Zoning Board erred by denying the zoning permit for reasons not cited by the

---

[7] Where the trial court does not conduct a hearing or receive any additional evidence, this Court's scope of review is to determine whether the zoning board "committed an error of law or manifestly abused its discretion." *Diversified Health Associates, Inc. v. Zoning Hearing Board of the Borough of Norristown*, 781 A.2d 244, 246-47 (Pa. Cmwlth. 2001). An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh,* 672 A.2d 286, 289 (Pa. 1996). "Substantial evidence" is such relevant evidence as a reasonable mind might accept **(Footnote continued on the next page . . .)**

zoning officer.[8]  Second, the Trust contends that the Zoning Board erred by denying its request for a dimensional variance because it demonstrated unnecessary hardship.

## Land Use Permit

In its first issue, the Trust argues that the Zoning Board lacked authority to disapprove its zoning permit for a reason not cited by the zoning officer.  The Trust's appeal was developed to address Section 140-15.C.(4)(c) of the Zoning Ordinance, as cited by the zoning officer.  By denying the Trust's request on the basis of another provision of the Zoning Ordinance, *i.e.*, Section 140-31.B, the Zoning Board denied the Trust due process.  The Zoning Board does not directly respond.[9]  It argues, simply, that the Trust had to prove that the zoning officer erred, and it did not establish error.  In fact, the Trustee, Becker, admitted that the proposed units did not meet the 750 square foot requirement.

At the hearing, Becker testified that the average size of a unit is approximately 350 square feet; his architectural plans showed that a typical unit had 342 gross square feet.  The Zoning Board explained that

> we deny the appeal of the zoning officer's decision.  Although the zoning officer cited probably an incorrect section of the code with respect to the floor space, the zoning officer was correct that the sufficient square footage requirement was not met.

---

**(continued . . .)**

as adequate to support a conclusion.  *Valley View Civic Association v. Zoning Board of Adjustment,* 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

[8] For purposes of this opinion, the Court has combined the Trust's first and second arguments in its brief into one argument.

[9] On appeal, Straban Township and its Board of Supervisors have intervened and joined in the Zoning Board's brief.

N.T., 8/6/2014, at 3; R.R. 100. The question is whether the Board erred in basing its ruling on a provision of the Zoning Ordinance different than the one cited by the zoning officer.

The Trust directs the Court to *Orange Stones Company v. Borough of Hamburg Zoning Hearing Board*, 991 A.2d 996 (Pa. Cmwlth. 2010). In that case, Orange Stones applied for a zoning permit to operate a drug and alcohol rehabilitation center on its property. The zoning officer denied the permit, finding that the proposed use of the property as a "hospital" was prohibited by the zoning ordinance since it would be located in a floodplain. Orange Stones appealed to the zoning hearing board, which affirmed the decision of the zoning officer. In doing so, the zoning hearing board concluded that because the proposed use included a "16 bed Halfway house," it constituted a "jail or prison," which, like a "hospital," could not be located within a floodplain. On appeal, Orange Stones argued, *inter alia*, that the board erred as a matter of law in deciding, *sua sponte*, that its proposed halfway house constituted a "jail or prison."

The zoning officer's denial letter did not state that Orange Stone's application was denied because the proposed halfway house constituted a "jail or prison." In fact, the zoning officer affirmatively testified before the board that a halfway house was permitted under the zoning ordinance. The focus of the testimony before the board was whether the "68 bed inpatient non hospital rehabilitation center for drug and alcohol persons" constituted a "hospital." *Orange Stones*, 991 A.2d at 999. At no point during the hearing did any party posit that the proposed halfway house actually constituted a "jail or prison." Whether the proposed halfway house constituted a "jail or prison" was never mentioned until the board issued its written decision. In reversing the board's

8

decision, this Court explained that although a zoning hearing board may clarify the issues in a case,

> Orange Stones had no indication that the [b]oard would deny its appeal and affirm the zoning officer's decision for a reason that was not raised by any party before the [b]oard. Therefore, the board improperly raised the "jail or prison" issue *sua sponte*.

*Orange Stones*, 991 A.2d at 1000.[10]

*Orange Stones* is distinguishable. Here, the issue of minimum habitable floor space was raised and discussed during the hearing before the Zoning Board made its decision.

Becker testified that each unit measures about 350 square feet. Wizeman, the Trust's architect, testified that each unit had approximately 280 net square feet and 342 gross square feet. In his closing statement, the Township's solicitor, Walton V. Davis, argued as follows:

> *What we have here is actually what's known in our zoning ordinance as a residential conversion. In Section 140-5 which is the definitions, residential conversions are defined as an existing building at the date of adoption of this chapter converted into residential dwelling units in accordance with this chapter.*
>
> Well, this is an existing building … and they are now converting it from no use, since it was determined that it was an

---

[10] The trial court, relying on *Orange Stones*, held that the Zoning Board exceeded its authority in holding that the zoning officer correctly denied the land use permit albeit for the wrong reason. Nevertheless, the trial court determined that, at most, the Trust would be entitled to a remand to the Zoning Board to determine whether the zoning officer erred in denying the use permit for the reasons stated in his denial letter; there was no reason to do this as the Trust was not requesting such relief. The Trust did not contest the fact that the proposed use does not meet the requirements of Section 140-15.C.(4)(c) of the Zoning Ordinance. Trial Court opinion, 9/24/2015, at 7.

9

abandoned motel use, to apartment or multiplex use, that's a residential conversion.

\* \* \* \*

*In Section 140-31 (B) (2) multi-family residential conversions*, secondary dwelling units, temporary housing for farm workers, and mobile and manufactured homes with exception of an efficiency apartment, the minimum habitable floor area, doesn't say gross, it *says habitable floor area, 550 square feet. It does say, however, that efficiency apartments can have 300 square feet, however, it says this exactly: Efficiency apartments (dwelling units for one person): 300 square feet*.

Now, these are the uses that are allowed and these are the uses that have even been discussed to a certain degree in this hearing tonight.

N.T., 7/16/2014, at 92-94; R.R. 92-94 (emphasis added). The Trust's counsel, Ronald Clever, requested an opportunity to respond to these arguments, and the request was granted.

At its next meeting of August 6, 2014, the Zoning Board had an exchange with the Board's solicitor regarding the Trust's brief. It follows:

Ms. Lordeman:[11] On the first matter I would move we deny the appeal of the zoning officer's decision. Although the zoning officer cited probably an incorrect section of the code with respect to the floor space, the zoning officer was correct that the sufficient square footage requirement was not met.

Ms. Kammerer:[12] Do I have a second to that motion?

Mr. McIlhenny:[13] Second.

---

[11] Jane Lordeman, member of the Zoning Board.

[12] Marcie Kammerer, Chairperson of the Zoning Board.

[13] Robert McIlhenny, Vice Chairperson of the Zoning Board.

Attorney Wilcox:[14] Just for clarification just so I'm sure, in other words, that section cited the required 750 square feet, I think you are indicating that that's not really the controlling standard, it's another section in the ordinance that controls minimum floor space.

Ms. Lordeman: Yes, Section 140-31 B.

Attorney Wilcox: We need a motion the 303 square feet set forth, you don't believe that –

Ms. Lordeman: I don't believe that was met either.

Attorney Wilcox: That meets the requirement. Okay.

Ms. Kammerer: There was a second to the motion. Is there any discussion on the motion?

(No response.)

Ms. Kammerer: With that said, all those in favor of the motion say aye.

Mr. McIlhenny: Aye.

Ms. Kammerer: Aye.

Ms. Lordeman: Aye.

Ms. Kammerer: Those opposed.

(No response.)

Ms. Kammerer: Motion is granted….

N.T., 8/6/2014, 3-4; R.R. 100-101.

The above-quoted notes of testimony show that the Trust was not deprived of an opportunity to present evidence or argument on whether its application satisfied Section 140-31.B. The zoning officer's letter referenced the

---

[14] Clayton Wilcox, Solicitor to the Zoning Board.

11

wrong provision of the Zoning Ordinance. However, the Trust knew that square footage, specifically the minimum habitable floor space, was the issue before the record closed. It did not object when the Zoning Board corrected the denial letter to include Section 140-31.B. Likewise, the Trust did not request an opportunity to submit additional evidence to address Section 140-31.B of the Zoning Ordinance. The Trust's evidence addressed why it could not satisfy the 750 square foot minimum requirement of Section 140-15.C.(4)(c) of the Zoning Ordinance. The Trust does not specify what different evidence, if any, it would have presented to address the 550 habitable square foot requirement in Section 140-31.B.

In any case, the Trust looks at Section 140-15.C.(4)(c) in a vacuum. Section 140-15.C.(4)(c) provides: "*Unless otherwise specified in this chapter*, each unit shall be a minimum of 750 square feet or larger." (emphasis added). Section 140-31.B of "this chapter" specifies that all "dwelling units" shall not be less than the minimum habitable floor area as follows:

> (2) Multifamily, residential conversions, secondary dwelling units, temporary housing for farm workers and mobile or manufactured homes, with the exception of efficiency apartments: 550 square feet; (3) Efficiency apartments (dwelling units for one person): 300 square feet."

ZONING ORDINANCE §140-31.B.(2) and (3). The citation noted by the zoning officer was not erroneous; it was simply incomplete.

The correction by the Zoning Board actually favored the Trust by reducing the square footage requirements for the multiplex. More importantly, unlike the landowner in *Orange Stones*, the Trust knew before the record closed the nature of the legal issue. The Trust could have requested more time to submit evidence, if it had deemed it appropriate. It was given the opportunity to file a

12

brief to address the requirements of Section 140-31.B.  We reject the Trust's argument that it was denied due process.

## Dimensional Variance

In its second issue, the Trust argues that it met the burden for a dimensional variance.  It contends that the Zoning Board ignored the testimony offered by Becker and the Trust's architect, Wizeman, on the prohibitive cost of the work required to renovate the former motel to make each unit comply with the minimum requirements of Section 140-15.C.(4)(c) of the Zoning Ordinance for a multiplex in the MU-2 zoning district.  The Township counters that the Trust offered no evidence that it considered other uses of the property that will not require a variance from current zoning requirements.

The Township has adopted the following requirements for a variance, which echo those found in Section 910.2(a) of the Pennsylvania Municipalities Planning Code:[15]

> (1) The Zoning Hearing Board shall hear requests for variances where it is alleged that the provisions of this chapter inflict unnecessary hardship upon the applicant….  The Board may grant a variance, provided that all of the following findings are made in a given case:
>
> > (a)  That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of a lot area or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by

---

[15] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a).

the provisions of this chapter in the neighborhood or district in which the property is located.

(b)   That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(c)   That such unnecessary hardship has not been created by the applicant.

(d)   That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(e)   That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue.

ZONING ORDINANCE §140.61.D.(1)(a)-(e).   "When seeking a dimensional variance within a permitted use, the owner is only asking for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations."   *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998).   In *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015), this Court explained:

> Under *Hertzberg*, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance.   These factors include: "*the economic detriment to the applicant if the variance was denied,* the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and *the characteristics of the surrounding neighborhood.*"   *Id.* at 50 (emphasis added).

14

Although *Hertzberg* eased the requirements, it did not remove them. *Tri–County* [*Landfill, Inc. v. Pine Township Zoning Board*, 83 A.3d 488 (Pa. Cmwlth.), *appeal denied,* 101 A.3d 788 (Table) (Pa. 2014)]. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. *Id.*

Proof of hardship is required for any variance, even a dimensional variance. Where a variance is requested to increase profitability or maximize development potential, unnecessary hardship is not satisfied "even under the relaxed standard set forth in *Hertzberg.*" *Society Hill Civic Association v. Philadelphia Zoning Board of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012) (citations omitted). The unreasonable economic burden must apply to "all dimensionally compliant uses of the property, not just the particular use the owner chooses." *Yeager v. Zoning Hearing Board of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (emphasis added). It is the property that causes the hardship, not the applicant. *Id.*

Here, the Trust contends that it proved an unnecessary hardship because it would be prohibitively expensive to transform the existing dwelling units into units measuring 750 square feet. Becker opined that, if he had to reconfigure the building, "the rents won't go up very much at all because this is affordable housing at the lower level of rents that can be achieved in that area of Straban Township." N.T., 7/16/2014, at 33; R.R. 33.

The Zoning Board explained that the Trust's perceived hardship arises from its plan to convert each motel room into undersized dwellings for individuals and families. Zoning Board's opinion at 8; R.R. 125. However, two motel room units could be merged into one apartment, which would meet the standards for a

15

three unit residential conversion or efficiency apartments. *Id.* This would also conform to the minimum habitable floor area requirements.

In determining whether an applicant has satisfied the requirements for a dimensional variance, all compliant uses of the property must be considered, not just the particular use that the owner prefers. *Township of Northampton v. Zoning Hearing Board of Northampton Township*, 969 A.2d 24, 29-30 (Pa. Cmwlth. 2009)*; Yeager,* 779 A.2d 595. "A variance may be granted only *upon proof that a substantial burden attends all dimensionally compliant uses of the applicant's property....*" *Township of East Caln v. Zoning Hearing Board of East Caln Township*, 915 A.2d 1249, 1254 (Pa. Cmwlth. 2007) (emphasis added). The Trust does not claim that a substantial burden attends all dimensionally compliant uses of the property as required.[16] *Id.* Accordingly, the Trust did not prove that there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance.[17] Further, this Court may not substitute its

---

[16] The MU-2 zoning district, in which the property is located, permits numerous residential and non-residential uses, including, but not limited to, single-family detached dwellings, multiplexes, residential conversions, professional offices, personal service businesses, and community buildings. *See* Section 140-11 of the Zoning Ordinance, Table 140-11-1.

[17] In its opinion, the trial court reasoned:

> Becker testified that it would cost $16,000 to move or replace an interior wall and to re-configure the area comprising Units 4-12 would cost approximately $90,000. However, he offered no contractor estimates supporting these figures. Furthermore, it is not clear that any interior walls need to be removed in order to combine two existing units into a single unit. A careful review of Trust Exhibit 2 reveals a significant likelihood that eight of the units (No. 5-12) could be combined into four units…by simply creating an entry way between the two combined units near one of the front doors…. Using Becker's figures, this would increase the gross area of each combined unit to approximately 684 square feet and would only require an 8.8% deviation from the requirements of the ordinance…. Consequently, Becker has not shown that the deviation request is the least modification necessary to secure the permitted use.

**(Footnote continued on the next page . . .)**

interpretation of the evidence for that of the fact-finder, in this case the Zoning Board.[18] Based on the Board's findings that the Trust did not prove unnecessary hardship or that it will be substantially burdened by every dimensionally compliant use of the property, we conclude that the Board did not err in upholding the denial of the Trust's requested variance.

For all of these reasons, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

---

**(continued . . .)**

Trial court opinion, 9/24/2015, at 14-15 (internal footnotes omitted).

[18] "On review[,] an appellate court may not substitute its interpretation of the evidence for that of the Board. Assuming the record demonstrates the existence of substantial evidence, the Court is bound by the Board's findings which are the result of resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence." *Vanguard Cellular System, Inc. v. Zoning Hearing Board of Smithfield Township*, 568 A.2d 703, 707 (Pa. Cmwlth. 1989). "The Board, as fact finder, has the power to reject even uncontradicted testimony if the Board finds the testimony to be lacking in credibility." *Id.*

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heywood Becker, Trustee of          :
Hanoverian Trust and                :
Hanoverian Trust,                   :
                Appellants          :
                      :
             v.          :    No. 2092 C.D. 2015
                      :
Zoning Hearing Board of             :
Straban Township                    :

# **O R D E R**

AND NOW, this 26th day of August, 2016, the order of the Adams County Court of Common Pleas dated September 24, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge