# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dean Shultz and John Dufendach             :
                                           :
              v.                            : No. 989 C.D. 2021
                                           : Argued: September 13, 2023
The Zoning Hearing Board of Mount Joy       :
Township, Mount Joy Township, and           :
Gettysburg Concrete Company, Inc.           :
                                           :
Appeal of: Gettysburg Concrete              :
Company, Inc.                               :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  November 2, 2023


Gettysburg Concrete Company, Inc. (Applicant) appeals the order of the Adams County Court of Common Pleas (trial court) reversing the decision of the Zoning Hearing Board of Mount Joy Township (Board) that had granted Applicant's application for a dimensional variance. We affirm.

New Enterprise Stone & Lime Company, Inc. (Landowner) owns two parcels of property totaling 20.18 acres at 1745 Baltimore Pike, Mount Joy

Township, Adams County, which are located in the Baltimore Pike Corridor-Intensive Uses Overlay (BPC-O) Zoning District.[1] The northeast portion of the property is primarily an open grassland with a few construction trailers and a storage building. A portion of this area is used as a construction staging area and for the storage of construction material such as crushed rock. The remainder of the property is a wooded slope going down to Rock Creek, which runs from the northwest to the southeast along the southwest border of the property. The property has been intermittently used for construction storage, but is primarily open grassland with the wooded slope to the creek.

---

[1] Under the Mount Joy Township Zoning Ordinance (Ordinance), the following are permitted as principal uses in the BPC-O Zoning District: (1) Animal Grooming and Indoor Training; (2) Auction House or Flea Market; Billboard; (3) Car Wash; (4) Catering Facility (no on-site consumption); (5) Construction Company or Tradesperson's Headquarters - office only; (6) Construction Company or Tradesperson's Headquarters - outside storage of equipment and materials; (7) Convenience Store; (8) Crafts or Artisan Studio; (9) Dry Cleaners, Laundries, and Laundromats; (10) Dwelling, Single-Family; (11) Dwelling, Two-Family; Forestry; (12) Gasoline Service Station; (13) Golf Course; (14) Grocery Store; (15) Group Home; (16) Historic Building; (17) Hobby School; (18) Hotel or Motel; Kennel; (19) Laundromat or Dry Cleaning; (20) Manufacturing, Light; (21) Massage Parlor; (22) Medical Office; (23) Motor Vehicle Repair Facility; (24) Motor Vehicle Sales; (25) Nursing Home; Office; (26) Parking Lot, as a principal use; (27) Personal Services; (28) Place of Assembly; (29) Place of Worship; (30) Plant Nursery or Garden Center; (31) Professional Services; (32) Recreation Facility; (33) Repair Facility (appliances, equipment, bicycles, but excluding motor vehicles); (34) Restaurant; (35) Retail (sales and rental); (36) Self Storage; (37) Sober Living Residence; (38) Solar Energy System; (39) Tavern or Bar; (40) Theater; (41) Trade School; (42) Veterinary Office; (43) Wholesale Sales; (44) Wireless Communications Facility, Tower Based; and (45) Wireless Communications Facility, Non-Tower Based (DAS, DCU, small cell). *See* Reproduced Record (RR) at 168a-170a.

The following are permitted as conditional uses in the BPC-O Zoning District: (1) Adult Use; (2) Gaming; (3) Junkyard; (4) Manufacturing, Heavy; (5) Mining Quarrying, and Related Processing Operations; (6) Slaughterhouse; (7) Target Range; and (8) Uses Not Provided For. *See id.* It is undisputed that the proposed concrete batch plant and mix asphalt batch plant for another property in Mount Joy Township are "related processing" to the quarry use currently conducted on the Cumberland Township property, which use is a permitted conditional use in the BPC-O Zoning District.

Applicant is the tenant of another property owned by Landowner and operates a concrete batch plant on quarry property on the northwest side of Rock Creek in Cumberland Township. Due to ongoing quarry operations, Applicant desires to expand the quarrying operations and relocate the concrete batch plant to a site that is not affected by the quarrying. Applicant also wishes to construct a hot mix asphalt batch plant at the same location of the concrete batch plant. Applicant wants to construct both plants on the property in Mount Joy Township, which are permitted conditional uses in the BPC-O Zoning District.

The concrete batch plant requires the use of silos and superstructures that are approximately 56 feet high in order to operate appropriately. The hot mix asphalt batch plant requires the use of silos and superstructures that are approximately 85 feet high to operate appropriately. However, under the Ordinance, the maximum permissible height in the BPC-O Zoning District is 50 feet. *See* RR at 170a. Accordingly, Applicant submitted a variance application to the Board for a variance from the height restriction. *See id.* at 80a-89a.[2]

---

[2] The application states the following, in pertinent part:

> The Pennsylvania Municipalities Planning Code[ (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202,] and [Ordinance Section 1101(A)(2)] provide for the granting of variances that satisfy several specific conditions[:]
>
> *A.    That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this Ordinance in the neighborhood or district in which the property is located.* [Applicant] believes that this standard is not relevant to the request. As noted above, the request at hand is not for a traditional

**(Footnote continued on next page…)**

3

dimensional variance in the sense that relief from a setback (for example) is required for the proposed use to be viable. Rather, the required relief from height limitations is necessary for the proposed use to be able to function from an engineering standpoint.

*B.     That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.* [Applicant] does not assert that the property cannot be developed in any way without the requested variance. However, the property cannot be developed with the proposed processing facilities (which are permitted as conditional uses in the BPC-O [Z]oning [D]istrict) without a variance from the building height restrictions of that district. The property was purchased by [Landowner] in 1995, shortly after the adjacent quarry property was purchased. However, the relative size of the subject property to the quarry property (less than 20% of the size of the quarry property) and the location of the property on the opposite side of Rock Creek indicates that the subject property was not purchased primarily for purposes of mineral extraction but rather for the proposed purpose of relocating processing facilities that are currently on the quarry property. These facilities are rapidly becoming encumbrances on the quarrying operation, as the facilities and the access to them are occupying a portion of the site that is primed for further extraction. It is unclear whether or not the dimensional requirements set by the [Ordinance] have changed since the subject property was purchased in 1995; however, the proposed use cannot be developed on the subject property under current zoning regulations without a variance as to structure height.

*c.     That such unnecessary hardship has not been created by the app*[*licant*.] The hardship in this case is the inability to develop the subject property as the desired mineral processing facilities without relief from height restrictions. As noted above, we do not know for certain that dimensional requirements have become more restrictive as zoning regulations have changed over the last 25 years. However, the combination of zoning requirements and physical engineering requirements for the proposed permitted use are in direct conflict at the present time. The hardship is not being created by [Applicant] but is a direct result of the dimensional zoning requirements being

**(Footnote continued on next page…)**

4

On December 10, 2020, the Board held a hearing on Applicant's application. At the hearing, Dean Shultz and John Dufendach (Objectors) were granted party status as the owners of property adjacent to, and across the street from, the property at issue herein. Objectors did not present direct evidence, but cross-examined witnesses offered by Applicant in support of the application. Specifically, Applicant presented the testimony of Terrence Sheldon (Sheldon), a self-employed civil engineer who prepared the variance application, and Greg Willi (Willi), a goniometric specialist for Employer. Ultimately, at the conclusion of the hearing, the Board voted 2-1 to grant the variance application. *See* RR at 68a.

On January 19, 2021, the Board issued a written decision in support of the grant of the variance, in which it made the following relevant findings of fact: (1) the requested dimensional variance "refers to the inability of the proposed plants to operate properly without relief from the maximum height requirement of 50 feet"; (2) "[t]he silos and drag slat conveyor are the tallest components of the asphalt plant and are necessary for the factory-engineered design and functioning of the asphalt plant"; (3) "[t]he drag slat conveyor transports asphalt plant products into the silos"; (4) "[t]he silos provide the required storage space for asphalt plant products as they are produced and they also serve a dual function as the component that loads the asphalt products onto trucks"; (5) "[t]he asphalt plant cannot be operated independently of the silos, therefore, the silos are a required component of the

insufficient to allow the development of the property with an
expressly permitted use.

RR at 81a-82a (emphasis in original).

asphalt plant"; and (6) "[s]imilar functions are true for the concrete batch plant, although the height requirements are not as great." RR at 105a.[3]

Based on the foregoing findings, the Board made the following relevant conclusions of law:

> 10. The requested height variance for the proposed concrete batch plant and asphalt batch plant does not fit neatly into the first criteria for a variance because any unique physical conditions of the property that there may be have nothing to do with the height of the silos or the hardship. Rather, the required relief from the maximum height of 50 feet for the proposed silos is so that the batch plants and the silos can properly function from an engineering standpoint.
>
> 11. The issue with regard to the second criteria for variance is not that the property cannot be developed without the variance. Rather, the proposed batch plants, which are permitted as conditional uses in the BPC-O [Z]oning [D]istrict cannot be built without a variance from the maximum height requirement of 50 feet because the concrete batch plant needs a minimum height of 56 feet and the asphalt plant needs a minimum height of 85 feet in order to operate properly. If the variance is not granted, otherwise permitted uses will not be permitted.
>
> 12. With regard to the third criteria for variance, the hardship has not been created by [Applicant] or [Landowner]. The combination of the maximum height limitation and the physical engineering requirements for

---

[3] The Board also made findings on the concerns expressed by other neighboring landowners, the Gettysburg National Military Park (Park) and the Gettysburg Foundation, with respect to the silos' impact to the view from the Park. *See* RR at 105a-06a. The Board found that "the effect is negligible," "[e]ven during the winter," "due to the presence of intervening hills and forested land between the [Park] and the proposed batch plants," and that "[w]hen the trees adjacent to the Culp's Hill tower [in the Park] have foliage, the silos will be completely invisible." *Id.* The Board also found that "[t]he foliage on the trees would also block the view of the silos from the property of [Objector] Shultz," but that "[t]he silos . . . will be visible from Baltimore Pike." *Id.* at 106a.

6

the batch plants and silos are in direct conflict with one another. The hardship is a direct result of the maximum height requirement being insufficient to allow the development of the property with a permitted use, namely the batch plant and silos.

RR at 109a.

On February 8, 2021, Objectors appealed the Board's decision to the trial court, and Applicant and Mount Joy Township intervened. All of the parties submitted briefs to the court in support of their respective positions. On appeal, Objectors asserted, *inter alia*, that Applicant failed to satisfy the requirements of the Ordinance and the MPC because "there is no hardship, any such hardship would be self-inflicted, and the property can be used for other permitted purposes." RR at 115a. Applicant relied, *inter alia*, upon this Court's opinion in *In re Appeal of Towamencin Township*, 42 A.3d 366 (Pa. Cmwlth. 2012),[4] "to support its ruling that

---

[4] As this Court has explained:

In *Towamencin Township*, we upheld the grant of a dimensional variance from, among other things, a zoning ordinance's height requirement to allow a landowner, who operated a farm on his property, to construct a newer, larger silo for crop storage. We explained the zoning board granted the dimensional variance in order to sustain the reasonable, pre[]existing use of the property, and the record supported the zoning board's finding that the landowner would suffer unnecessary financial hardship absent the grant of the variance. Specifically, soft, moist soils native to the property prevented the landowner from continuing to store crops in "hag bags." We determined substantial evidence supported the zoning board's finding that this storage method threatened the continued viability of the farm necessitating construction of the newer, larger silo.

*DigEntGrp, LLC v. West Nantmeal Township Zoning Hearing Board* (Pa. Cmwlth., No. 1969 C.D. 2012, filed June 19, 2013), slip op. at 15-16 (citations omitted).

7

[Applicant] presented sufficient evidence establishing unnecessary hardship so as to justify the grant of a dimensional variance." *Id.* at 120a.

Ultimately, on August 5, 2021, the trial court issued an opinion and order reversing the Board's decision granting Applicant's application for a variance. *See* RR at 110a-123a. With respect to the requisite unnecessary hardship, the trial court explained:

> Unlike in [*Towamencin Township*], in this case, the hardship does not attend the property, but is created based on [Applicant's] decision to reconstruct the concrete batch plant and add a newly[-]constructed hot mix asphalt batch plant in Mount Joy Township so [Applicant] can expand its quarrying operation in Cumberland Township, to increase its profits. [Applicant's] witness, [Sheldon], specifically testified that the dimensional variance is not based upon any unique physical circumstances or conditions peculiar to the property nor that the unnecessary hardship is due to such conditions from the property. Furthermore, [Applicant] seeks to build both operations on a lot in Mount Joy Township that is not otherwise improved for the use requested. Finally, unlike in [*Towamencin Township*], in this case, both neighbors and the [Park] are opposed to the dimensional variance.

*Id.* at 121a-22a. Applicant filed the instant timely appeal from the trial court's order.

On appeal to this Court,[5] Applicant's sole claim[6] is that the trial court erred in reversing the Board's decision granting its variance application.

---

[5] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the Board abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). The Board, as the finder of fact, is empowered to judge the credibility of the evidence and the weight it should be afforded; a court may not substitute its interpretation of the evidence for that of the Board. *In re Richboro CD Partners, L.P.*, 89 A.3d 742, 754-55 (Pa. Cmwlth. 2014).

[6] Initially, Applicant also asserted in the alternative that the trial court erred in failing to consider the Board's grant of the variance application as a "recognition" that the Ordinance's **(Footnote continued on next page…)**

Specifically, Applicant asserts that the trial court erred in disregarding the Board's findings of fact establishing an unnecessary hardship and in distinguishing *Towamencin Township*, which supports the grant of a dimensional variance herein. We do not agree.

As referenced above, with respect to Applicant's application for a dimensional variance herein, Ordinance Section 1101(A)(2) states:

> The [Board] may grant a dimensional variance, provided that the applicant submits sufficient evidence for the [Board] to make the following required findings where relevant in a given case. These findings repeat the criteria for the grant of a dimensional variance set forth in Section 910.2 of the MPC[7] and shall, at all times be consistent with the criteria then current in the MPC:
>
> a.    That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this Ordinance in the neighborhood or district in which the property is located;
>
> b.    That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;
>
> c.    That such unnecessary hardship has not been created by the app[licant];

___

height limitation constitutes a *de facto* exclusion of a permitted use. However, Applicant withdrew this claim at oral argument.

[7] Added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §10910.2.

d.     That the variance, if authorized, will not alter the essential character of the district or neighborhood in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare;

e.     That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulations in issue[; and]

f.     In considering the application for a dimensional variance, the [Board], for purposes of determining whether the lot (not the person) is subject to unnecessary hardship, may consider such other fact[or]s as have been established by the Courts of Pennsylvania, which under current law include economic detriments to the applicant if the variance is denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirement from which variance is sought, and the characteristics of the surrounding neighborhood if the lot that is the subject of the application is located in a blighted area and the application will advance the neighborhood's rehabilitation.

RR at 290a-91a.

As this Court has observed:

> We view this language through the lens of our well-established case law in this realm:
>
>> A variance . . . is issued by a zoning hearing board [and] is not provided for in the zoning ordinance, but [rather] is permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land. . . . Although zoning ordinances are to be liberally construed to allow for the broadest possible use of the land, the applicant seeking a variance bears a heavy burden. *See Beers ex rel. P/O/A Beers v. Zoning Hearing B[oard]*

10

> *of Towamensing T*[*ownship*], 933 A.2d 1067, 1069 (Pa. Cmwlth. 2007) (the letter of the ordinance cannot be disregarded under the pretext of pursuing the spirit). . . . The reasons for granting a variance must be substantial, serious, and compelling. *Valley View*[ *Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)].

*Nowicki v. Zoning Hearing B*[*oard*] *of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014).

With regard to dimensional variances in particular, they "involve[] a request to adjust zoning regulations to use[] property in a manner consistent with [those] regulations," in contrast to use variances, which "involve[] a request to use property in a manner that is wholly outside zoning regulations." *Tri-C*[*ounty*] *Landfill, Inc. v. Pine T*[*ownship*] *Zoning Hearing B*[*oard*], 83 A.3d 488, 520 (Pa. Cmwlth. 2014). Dimensional variances consequently pose a lesser potential threat to the public interest, as they do not create the same degree of deviation from zoning regulations as their brethren. *Bawa Muhaiyaddeen Fellowship v. Phila*[*delphia*] *Zoning B*[*oard*] *of Adjustment*, 19 A.3d 36, 40 (Pa. Cmwlth. 2011). In keeping with this, "[t]he quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Hertzberg v. Zoning B*[*oard*] *of Adjustment of City of Pittsburgh*, 721 A.2d 43, 48 (Pa. 1998). "To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building [or property] into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Id.* at 48.

However, this does not mean that "dimensional requirements . . . [are] 'freefire zones' for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially 'hurt' if it could not do what it wanted to do with the

11

property[.]" *Soc[iet]y Created to Reduce Urban Blight v. Zoning B[oard] of Adjustment of City of Phila[delphia]*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001). "Although a property owner is not required to show that his or her property is valueless unless a variance is granted, mere economic hardship will not[, in and] of itself[,] justify a grant of a variance." *Marshall v. City of Phila[delphia]*, 97 A.3d 323, 330 (Pa. 2014) (some punctuation omitted). Nor are "personal . . . considerations . . . sufficient grounds upon which to base the grant of a variance." *Borough of Latrobe v. Sweeney*, 331 A.2d 925, 927 (Pa. Cmwlth. 1975). "A variance, whether labeled dimensional or use, is appropriate 'only where the **property**, not the person, is subject to hardship.'" *Yeager v. Zoning Hearing B[oard] of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). The onus is thus on the applicant to firmly establish that "a substantial burden . . . attend[s] **all** dimensionally compliant uses of the property, not just the particular use [that the applicant has chosen]." *Id.* at 598 (emphasis in original). Accordingly, our appellate courts have "consistently reject[ed] requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to [develop a property as it sees fit], the unnecessary hardship criterion required to obtain a variance is not satisfied[.]" *Soc[iet]y Hill Civic Ass[ociatio]n v. Phila[delphia] Zoning B[oard] of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012); *accord Singer v. Phila[delphia] Zoning B[oard] of Adjustment*, 29 A.3d 144, 150 (Pa. Cmwlth. 2011); *Yeager*, 779 A.2d at 598.

*Plum Borough v. Koromvokis and Zoning Hearing Board of the Borough of Plum* (Pa. Cmwlth., No. 179 C.D. 2021, filed November 15, 2021), slip op. at 8-10 (emphasis in original).[8] *See also Township of East Caln v. Zoning Hearing Board*

---

[8] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to an unpublished non-precedential memorandum decision of . . . th[is] Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").

12

*of East Caln Township*, 915 A.2d 1249, 1254 (Pa. Cmwlth. 2007) ("A variance may be granted only upon proof that a substantial burden attends ***all*** dimensionally compliant uses of the applicant's property, which is simply not the case here.") (emphasis added); *Yeager*, 779 A.2d at 598 ("[*Hertzberg*] did not alter the principle that a substantial burden must attend ***all*** dimensionally compliant uses of the property, not just the particular use the owner chooses.") (emphasis in original).

In this case, the variance application that Applicant submitted to the Board concedes that "[A]pplicant does not assert that the property cannot be developed in any way without the requested variance. However, the property cannot be developed with the proposed processing facilities (which are permitted as conditional uses in the BPC-O [Z]oning [D]istrict) without a variance from the building height restrictions of that district." RR at 82a. The application also states that "[t]he hardship in this case is the inability to develop the subject property as the desired mineral processing facility without relief from the height restrictions." *Id.*

Moreover, at the Board hearing, Sheldon also conceded that the requested dimensional variance "does[ not] have anything specifically to do with the lot. It has to do with the operations" of the proposed concrete and hot mix asphalt batch plants. *Id.* at 28a. He continued: "[T]he dimensional variance that we're seeking is not . . . the traditional way that we think of a dimensional variance. It's a height variance. It really doesn't have anything specifically to do with the property." *Id.* at 31a-32a. Sheldon added: "The issue is that we cannot develop the property with this particular use, the asphalt and concrete batch plants, in strict conformity with the Ordinance." *Id.* at 32a. Further, Willi testified regarding the necessity of the relevant silo heights to the operations of the plants. *See id.* at 47a-50a.

13

However, as outlined above, the requisite hardship sufficient to support the Board's grant of a variance must apply to "*all* dimensionally compliant uses of the applicant's property, which is simply not the case here." *Township of East Caln*, 915 A.2d at 1254 (emphasis added). Stated simply, Applicant did not demonstrate that the physical characteristics of the property did not allow the property to be used for any of the more than 40 other uses that are permitted by right, or the other 7 uses permitted as a conditional use, in the BPC-O Zoning District. Rather, Applicant merely demonstrated that the property cannot be used for the proposed conditional use due to the height restriction. As outlined above, standing alone, this is not a sufficient basis upon which the Board could grant the requested variance.

Nevertheless, Applicant contends that our holding in *Towamencin Township* compels a different result. We do not agree.

As this Court has noted:

> [The a]pplicant's reliance on *Towamencin Township* is misplaced for several reasons. First, in *Towamencin Township*, we specifically rejected an argument that the variance relief sought was in the nature of a use variance rather than a dimensional variance. In so doing, we stated, "the silo's increased dimensions will not reach into a buffer zone or a district that . . . does not permit agricultural use." Here, unlike in *Towamencin Township*, [the a]pplicant's proposed [evapotranspiration sewage] system and accessory greenhouse would, in fact, be located in an overlay district that prohibits an on-lot sewage disposal system.
>
> Further, unlike in *Towamencin Township*, the factfinder here determined [the a]pplicant did not prove unnecessary hardship justifying the grant of a variance, and the record supports that determination. Also, unlike the landowner in *Towamencin Township*, here [the a]pplicant does not require a variance in order to ensure the continued viability of a pre[]existing, permitted use. In

14

> fact, as explained above, an alternative, permitted use of the property exists.

*DigEntGrp, LLC v. West Nantmeal Township Zoning Hearing Board* (Pa. Cmwlth., No. 1969 C.D. 2012, filed June 19, 2013), slip op. at 16 (citation omitted).

Likewise, in the instant case, Applicant does not rely on a specific characteristic of the property at issue, such as the soft, moist soils in *Towamencin Township*, to demonstrate the requisite unnecessary hardship. Rather, Applicant relies on a height requirement that is applicable to all properties within the BPC-O Zoning District.

In addition, unlike the landowner in *Towamencin Township*, Applicant does not need a dimensional variance to ensure the continuation of a preexisting, permitted use. The property herein has been used intermittently for construction storage and remains primarily open grassland with the wooded slope to the creek. *See* RR at 104a. Importantly, Applicant did not demonstrate that it would suffer an economic loss due to its inability to continue the existing use as in *Towamencin Township*. Rather, Applicant merely wants the dimensional variance to move the processing facilities from its present site to maximize the quarrying operations on the adjoining property in Cumberland Township. Applicant is merely seeking to maximize economic benefit of its use of the property. In short, the trial court did not err in reversing the Board's decision granting the requested variance, and *Towamencin Township* does not compel a different result.[9]

---

[9] As a corollary to this claim, Applicant asserts that the Board's determination of unnecessary hardship required by Section 1101(A)(2)(a) of the Ordinance is a "finding of fact" that the trial court erred in "disregarding." *See* Brief of Appellant at 3, 9-11. However, as outlined above, with respect to the requirement of Section 1101(A)(2)(a), the Board specifically determined that "[t]he requested height variance for the proposed concrete batch plant and asphalt batch plant does not fit neatly into the first criteri[on] for a variance because any unique physical conditions **(Footnote continued on next page…)**

15

Accordingly, the trial court's order is affirmed.


_____
MICHAEL H. WOJCIK, Judge


Judge Wallace did not participate in the decision of this case.

_____

of the property that there may be have nothing to do with the height of the silos or the hardship." RR at 108a.

To the contrary, as indicated herein, Applicant was required to demonstrate that the hardship attached to the property was unique to that property and not all of the other properties in the BPC-O Zoning District. Accordingly:

> The failure of a zoning board to consider each requirement of a zoning ordinance prior to granting a variance is an error of law. *Sweeney* [*v. Zoning Hearing Board of Lower Merion Township*, 626 A.2d 1147, 1153 (Pa. 1993)]. Here, the zoning board failed to consider each of these requirements. Furthermore, the record reveals that [the] appellants failed to provide evidence that would satisfy even the first criteria. Accordingly, [the] appellants' claim must fail.

*Larsen v. Zoning Board of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289-90 (Pa. 1996).

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dean Shultz and John Dufendach      :
                                 :

             v.                 : No. 989 C.D. 2021
                                 :

The Zoning Hearing Board of Mount Joy  :
Township, Mount Joy Township, and      :
Gettysburg Concrete Company, Inc.      :
                                 :

Appeal of: Gettysburg Concrete        :
Company, Inc.                           :

# **O R D E R**

AND NOW, this 2nd day of November, 2023, the order of the Adams County Court of Common Pleas dated August 5, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

Dean Shultz and John Dufendach :
                     :
           v.               :
                     :
The Zoning Hearing Board of Mount : 
Joy Township, Mount Joy Township, :
and Gettysburg Concrete Company, Inc. :
                     :
Appeal of: Gettysburg Concrete    :    No. 989 C.D. 2021
Company, Inc.                  :    Argued: September 13, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY JUDGE FIZZANO CANNON              FILED: November 2, 2023

        I concur in the Majority's conclusion affirming the order of the Court of Common Pleas of Adams County (trial court). I write separately, however, to clarify what I believe to be the correct legal standard applicable to dimensional variance applications like the one at issue here.

The Pennsylvania Municipalities Planning Code (MPC),[1] addressing the standards for granting either a use or dimensional variance, provides, in relevant part:

> (a) The [zoning hearing board (board)] shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made *where relevant in a given case*:
>
> > (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
> >
> > (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
> >
> > (3) That such unnecessary hardship has not been created by the appellant.
> >
> > (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10101-11202.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Section 910.2(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a) (emphasis added). However, in *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43 (Pa. 1998), our Supreme Court held that, within this framework, the criteria for demonstrating unnecessary hardship to obtain a dimensional variance may be less onerous than for a use variance:

> To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

*Id.* at 50. Thus, *Hertzberg* includes and contemplates consideration of multiple factors and circumstances, not only topography or other physical characteristics of the property itself, in determining whether a hardship exists for purposes of a dimensional variance. Although the *Hertzberg* Court offered examples of the multiple factors that might be considered, its list was not exclusive. *Accord Mitchell v. Zoning Hearing Bd.*, 838 A.2d 819, 829 (Pa. Cmwlth. 2003) (explaining that "*Hertzberg* did not limit its holding to the facts in that case. Under *Hertzberg*, the characteristics and conditions of the surrounding neighborhood is not a determining factor, but only one of *many factors* to be considered in determining unnecessary hardship for a dimensional variance.") (emphasis added).

Here, Gettysburg Concrete Company, Inc. (Applicant) suggests that the zoning ordinance itself, by virtue of the fact that it excludes a particular permitted use as applied, creates the "unnecessary hardship" needed to establish the criteria

required by *Hertzberg* and its progeny for a dimensional variance. Stated otherwise, the exclusionary nature of the property's zoning itself may be considered a characteristic of the property for purposes of determining whether there is a hardship sufficient to support a variance. Specifically, Applicant maintains that the zoning ordinance allows its proposed plant as a conditional use in the zoning district at issue, while at the same time precluding that use by reason of the general height limitation. This argument suggests that the zoning ordinance itself excludes a permitted use and thereby creates the hardship that supports a dimensional variance.

The Majority states that "[i]nitially, Applicant also asserted in the alternative that the trial court erred in failing to consider the [Zoning Hearing Board of Mount Joy Township's (Board)] grant of the variance application as a 'recognition' that the Ordinance's height limitation constitutes a *de facto* exclusion of a permitted use. However, Applicant withdrew this claim at oral argument." *Shultz v. Zoning Hearing Bd. of Mount Joy Twp.* (Pa. Cmwlth., No. 989 C.D. 2021, filed November 2, 2023), slip op. at 8-9 n.6. I agree that Applicant is not raising a validity challenge to the zoning ordinance and is not requesting a constitutional analysis or curative amendment to the zoning ordinance in the form of site-specific relief. However, counsel also clarified at oral argument that Applicant was nevertheless continuing to argue that the exclusionary effect of the Ordinance created the hardship that supported a dimensional variance.[2]

I agree with Applicant that a validity challenge is not necessary in order to argue that a zoning ordinance is exclusionary so as to create an unreasonable

---

[2] In that regard, I note that, other than unrestricted height for normal agricultural uses and a 65-foot limit on the height of amateur radio antennas, the 50-foot height restriction in the Baltimore Pike Corridor Intensive Uses Overlay is the highest in Mount Joy Township (Township); other zoning districts have height limitations varying from 35 to 40 feet. MOUNT JOY TWP., ADAMS CNTY., PA., ZONING ORDINANCE, § 302.A (Nov. 2, 2017).

hardship and justify a dimensional variance under circumstances like those alleged in this case. I believe it is important to recognize that where a permitted conditional use in the relevant zoning district is impossible due to other zoning district restrictions, such as the general height limitation in this case, the ostensible authorization for that use becomes illusory, and an applicant has a viable argument that the zoning ordinance itself has created an unreasonable hardship.

The Majority focuses on the fact that Applicant wants this use on this property but that other uses could be built on the property. However, the Majority's analysis does not consider whether the Ordinance itself works a hardship on the permitted use at issue. *Hertzberg* teaches, and the Township conceded at argument, that an applicant is "not required to prove that the property was unmarketable without the desired variance, but only that *the zoning requirements work an unreasonable hardship in the owner's pursuit of a permitted use*." *Hertzberg*, 721 A.2d at 47 (quoting trial court with approval) (emphasis added) (quotation marks omitted).[3]

I agree with Applicant that an exclusionary effect of the zoning ordinance on the property may constitute a unique feature of the property or a unique circumstance creating an unreasonable hardship. Hardship must be attendant to the

---

[3] This does not mean that the ordinance must work an unreasonable hardship in the owner's pursuit of *every* permitted use. As our Supreme Court explained in *Hertzberg*, "the standard . . . which would deny a variance to any applicant who failed to demonstrate that the property could not be used for any permitted purpose, is in direct contradiction to this Court's holding in *Halberstadt* [*v. Borough of Nazareth,* 687 A.2d 371 (Pa. 1997)]" (reversing this Court's denial of a dimensional variance, where the denial was based on the availability of alternative permitted uses that did not require a variance). *Hertzberg*, 721 A.2d at 49. *See also Vitti v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 710 A.2d 653, 658 (Pa. Cmwlth. 1998) (rejecting an objector's argument that there were "literally dozens of permitted uses" available for the property and that a dimensional variance required a showing that the property could not be used for any permitted purpose).

property and not the person, but it does not always have to relate to the physical features or characteristics of the land (*i.e.*, topography, lot size, etc.).  For example, a feature consisting of a dilapidated building in a blighted neighborhood, rather than the land, may be the relevant and unique circumstance attendant to the property that must be considered in evaluating hardship.  *Hertzberg*, 721 A.2d at 49 (citing *Vitti*, 710 A.2d at 658).  As *Hertzberg* explained, multiple factors should be considered in determining whether there is a hardship supporting a dimensional variance, and those factors are not limited to the few enumerated in *Hertzberg* itself.  *Hertzberg*; *Mitchell*.  As the Board's solicitor acknowledged at oral argument, "[a]lthough unnecessary hardship usually relates to the physical characteristics of the land, at times, the unnecessary hardship can relate to the building itself."  *Hertzberg*, 721 A.2d at 49 (quoting *Wagner v. City of Erie Zoning Hearing Bd.*, 675 A.2d 791, 799 (Pa. Cmwlth. 1996) (additional quotation marks omitted)).  For example, where a permitted use of a property is possible only through extensive reconstruction or demolition of a building, that circumstance may establish an unnecessary hardship.  *Hertzberg*.  That is one example of the many circumstances that may be considered pursuant to *Hertzberg*, but it is not the only one.  Another is that where a zoning ordinance names as a specific permitted use one that in fact cannot be exercised because of general dimensional provisions, the ordinance effectively gives the use with one hand and withdraws it with the other.  The interplay of the ordinance provisions in such a circumstance operates to create an unreasonable hardship that justifies a dimensional variance.

Of course, this does not mean that an applicant may obtain a dimensional variance any time it chooses a permitted use that does not fit within the zoning ordinance's dimensional limitations.  The applicant still must demonstrate an

unreasonable hardship imposed by the applicant's inability to engage in the permitted use without a dimensional variance. The difficulty Applicant faces here is that the record does not establish whether the Zoning Ordinance's height restriction excludes the proposed *use* altogether or whether it excludes only Applicant's specific proposed *design* for the plant it wants to build. Applicant neither pleaded nor offered any evidence addressing whether a concrete or hot asphalt plant could be constructed employing a different design that would meet the applicable height restriction. Indeed, when pressed at oral argument to point to any such evidence in the record, Applicant's counsel stated that such a question was never asked. Rather, the record reflects only that this *particular* concrete plant and asphalt plant could not be constructed within the height limitation. Thus, Applicant could not and did not meet its burden of proving a hardship not of its own creation. *Cf. Tri-Cnty. Landfill v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (concluding that a variance from a height restriction to allow construction of a landfill was properly denied where the applicant failed to demonstrate that a landfill structure complying with the height restriction would not be economically viable); *APT Pittsburgh Ltd. P'ship v. Penn Twp. Zoning Hearing Bd.*, 196 F.3d 469, 477 (3d Cir. 1999) (applying Pennsylvania law and explaining that although the applicant's chosen design allowed it to build only in a few locations, restrictions on exclusionary zoning "does not impose upon a township the duty to assure that all [applicants], regardless of the systems they have chosen to construct, will have a suitable site for a functioning tower within the township"). For that reason, I agree with the outcome reached by the Majority.

_____
CHRISTINE FIZZANO CANNON, Judge
